The Plaintiff charges that Lynn Walsh's proposal form (Exhibit 4) contains constructive fraud, at the very least, presuming she didn't know what she was doing and she didn't design the forms she is using. The crafting of the form's language, and the fact that the IRS has made it a standard form, qualify it for actual fraud, and the withholding of crucial information from the Plaintiff adds extrinsic fraud.

Exhibit 4, a proposal, contained the word "Proposed" within its enlarged, bold face heading. That alone would classify it as non-obligatory. Combined with other misleading, contradictory, and/or fraudulent information, such as its requirement to respond statement, it qualifies as "fraud in the factum" when followed by Exhibit 5, supposedly solidifying it.

None of the Defendants' forms seek to acquire or display the one basic piece of information, that should any form have at the beginning, would require no additional information. Identification that the Plaintiff is / is not engaged in a privileged taxable activity, and what that activity is, would unambiguously identify his taxpayer status. Then, and only then, would pertinent questions concerning only income generated from the taxable activities be necessary. Without that crucial piece of information, the IRS has violated the Plaintiff's Right to Privacy, because there is no requirement to know his income. It has no relevance. It has subjected him to involuntary servitude for no justifiable reason.

The Plaintiff charges Lynn Walsh's "proposal" (Exhibit 4) combined with her "Notice of Deficiency" (Exhibit 5), have fraudulently converted the Plaintiff's Sovereign status into an unjustified Taxpayer status, reducing his <u>Unalienable</u> Sovereign Rights to Corporate rights, subjecting him to privileged activity laws and taxes which he hadn't previously owed, constituting Deprivation of Rights Under Color-of-Law, 18 USC 242.

> "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda v Arizona, 384 U.S. 436 p 491

> "The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void and ineffective for any purpose; since its unconstitutionality dates from the time of its enactment… In legal contemplation, it is as inoperative as if it had never been passed… Since an unconstitutional law is void, the general principles follow that it imposes no duties, confers no rights, creates no office, bestows no power or authority on anyone, affords no protection and justifies no acts performed under it… A void act cannot be legally consistent with a valid law. Indeed, insofar as a statute runs counter to the fundamental law of the land, it is superceded thereby. No one is bound to obey an unconstitutional law and no courts are bound to enforce it." 16 Am Jur 2d S177, late Am Jur 2d S256

The Plaintiff charges that, since Exhibit 5 and subsequent documents demand forceful compliance with taxation derived from the proposal (Exhibit 4) under escalating threats, and the proposal is alleged to contain a fraudulent tax assessment, all subsequent documents received from the IRS are part of the perpetuation of the original alleged fraud and establish a basis for Conspiracy under 18 USC 241.

Exhibit 6 - On or about July 28, 2003, the Plaintiff received from Holtsville, NY a "WE CHANGED YOUR ACCOUNT" Notice, un-authored and unsigned. It was a changed assessment and switched how the Defendants were fraudulently assessing the Plaintiff from a 1040 form to a 1040A form, fraudulently increasing his alleged tax liability.

Exhibit 7 - On or about 9/1/2003, the Plaintiff received from Holtsville, NY a CP 501 Reminder Form 1040A tax assessment, balance due, un-authored and unsigned.

Exhibit 8 - On September 14, 2003, the Plaintiff wrote to the IRS office in Holtsville, NY, the source of the allegedly fraudulent documents. Again, he pointed out his need for information.

Exhibit 9 - On or about 11/3/2003, the Plaintiff received an "IMPORTANT - Immediate action is required" Notice CP-503 from Holtsville, NY, un-authored and unsigned.

The IRS Mission statement on Publication 594, "The IRS Collection Process" (Exhibit 9 enclosure) states "Provide America's taxpayers **top quality service by helping them understand** and meet their tax responsibilities **and by applying the tax law with integrity and fairness to all**. "**Top quality service**" is only extended to persons submitting to the 2nd class taxpayer status. "**Applying the tax law with integrity and fairness to all**" would most certainly mean providing the most basic information necessary for the Plaintiff to determine whether or not he is a taxpayer. Case Law identifies that he is not, and identifies illegal taxation.

Exhibit 10 - On 12/9/2003, the Plaintiff received a CP-504 "We intend to levy on certain assets" via certified mail from Holtsville, NY, un-authored and unsigned.

Exhibit 11 - On or about 2/18/2004, the Plaintiff received a "Final Notice of Intent to Levy and Notice of Your Right to a Hearing" via certified mail from Bensalem, PA, un-authored and unsigned.

Exhibit 12 - On 2/24/2004, the Plaintiff sent via certified mail, 4 more letters (Exhibit 3), again asking for information.

Exhibit 13 - On 2/24/2004, at approximately 2:45 PM (E.S.T.), the Plaintiff called the phone number on the Bensalem, PA Final Notice form, 800-829-3903, and spoke with Mrs. Moore about the notice. He explained that he was trying to find out what law made him liable to pay the "income tax" and that he had just sent 4 letters out via certified mail. He thought he was talking to the Bensalem office, but Mrs. Moore told him he was talking to the Nashville, TN office. She was going to discuss his problem with her supervisor, Mrs. Heard, and get back to him. The Plaintiff gave her his phone number. He asked for both of their phone numbers. Mrs. Moore told him she wasn't allowed to give them out. The Plaintiff asked her directly to get back to him, either way. She said she would. The Plaintiff never heard from her again.

Exhibit 14 - On 2/28/2004, the Plaintiff received a form letter 3175 (SC) (Rev. 2-1999) dated 2/25/2004 and signed by Dennis Parizek, IRS Operations Manager in Ogden Utah. He stated: "This is in reply to your recent correspondence." His letter then proceeded to instruct the Plaintiff on the ways of the IRS and how laws are made. Dennis Parizek did not supply the Plaintiff with the information he asked for in his documents.

Exhibit 15 – On 3/11/2004, the Plaintiff received back the original, he believes, of the letter he sent to Andover, MA in Exhibit 12 with no response attached.

Exhibit 16 - On 4/9/2004, the Plaintiff received a "Taxpayer's Copy of Notice of Levy" from Bensalem, PA signed by Larry Leder, Operations Manager, Collection. It appears to have attached a Levy to the Plaintiff's Bank Account.

Exhibit 17 - On 4/10/2004, the Plaintiff received a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320", attaching a lien "to all property the Plaintiff currently owns and all property the Plaintiff may acquire in the future". The Plaintiff cannot legally respond, even at this stage. He cannot properly fill out the CDP Hearing request form because it wants a taxpayer's name and signature. The Plaintiff has been contesting that very issue since 1999. He is not the "taxpayer" referenced in the IRS documents that have been sent to him. He feared that completing and signing the form would be tacit admission to the Defendants' fraudulent identification of him as a taxpayer, thus reducing his Sovereign Rights to the Corporate subset of rights and make him liable for an inappropriate tax, constituting excess taxation and violating his Constitutional Rights. The Plaintiff solemnly believes that remedy sought through the Collection Due Process Hearing under these circumstances, is also a continuation of the fraudulent representation and enforcement of a tax that does not apply to him.

Exhibit 18 - On 4/13/2004, the Plaintiff discovered that the IRS had withdrawn $1,143.05 out of his bank account. An online inquiry showed the unauthorized withdrawal. This withdrawal emptied his bank account and caused his mortgage check to bounce. He was charged a $22.00 fee.

The Plaintiff charges that it is impossible to comply with Federal or State Income Tax procedures without submitting to Taxpayer status, forcing him to relinquish "Unalienable Rights". The Plaintiff submitted 22 Affidavits In Lieu of Income Tax Forms (Exhibit 1) as the only legal remedy.

To date, the Plaintiff cannot find or obtain a legal basis for any of the Defendants' actions. Whenever the Plaintiff asked the Defendants for the basis of their respective income taxes (Exhibits 1, 8, and 12), the Defendants did not provide any. Without the one critical piece of information, the legal subject of taxation, the calculation of amount of tax is immaterial. To the best of his knowledge, the Plaintiff is not engaged in any taxable activity, nor could he possibly know if he were, because the Defendants will not identify which activities explicitly are. He is informed, per the Court Case citations herein, that his Right to labor, and its fruits, are not a legal subject of an excise tax. "Income" derived from a Sovereign Citizen's Right to Labor, is property, and a Right of "We, the People". It cannot be subject to indirect, avoidable (excise) tax, a privilege tax, and therefore is not subject to "Income Tax". The Defendants' withholding of this information ensures the Plaintiff cannot avoid privileged activities, thereby taking any of his activities out of the privileged category by their very nature of being unavoidable. The Plaintiff is not the "Taxpayer" as claimed by the Defendants. The Plaintiff charges that the Defendants' claims have no legal basis and are an act of Fraud under 18 USC 1001 and 1341; their escalating retaliation for Plaintiff's refusal to submit is Extortion under 18 USC 872.

The Plaintiff charges that the Defendants have fraudulently represented and enforced an excise tax, "income tax", which most definitely is valid against the activities of a corporate entity, but completely inapplicable to the Plaintiff's Right to Labor. A Corporate entity is a subject citizen of the U.S. with a subset of rights. The Plaintiff is a Sovereign Citizen, not a corporate entity, engaged in no taxable activity, to the best of his knowledge. His Rights are not subject.

The Plaintiff charges that the Defendants' actions fraudulently converted the Plaintiff's Sovereign status with Constitutionally protected <u>Unalienable</u> Rights to a 2nd class Corporate citizen (Taxpayer) status, whose existence is derived from government, and whose rights are dictated by government. The Plaintiff charges that the Defendants' procedures thus blocked any way for the Plaintiff to legally respond at any time without full Constitutional protection, and are Deprivation of Rights Under Color-of-Law, 18 USC 242, and Conspiracy Against Rights, 18 USC 241.

The Plaintiff charges that the forced conversion of his status from Sovereign to Taxpayer converts his Right to Labor into an <u>unavoidable</u> privileged activity, subject to a hugely complex set of taxation laws, creating a system of Slavery. The IRS complicated taxation system, designed by Government to handle extremely complex corporate entities, requires a tremendous amount of information, time, effort, and knowledge to accurately follow, which the Plaintiff was coerced to obey. While possibly justifiable as a cost of engaging a privileged activity, which is defined as avoidable, the misrepresentation to and coerced submission of the Plaintiff is Involuntary Servitude. The needless maintaining and compiling of receipts for each tax year, the study time associated with the complexity of "tax code", and the actual completion time of forms, are uncompensated forced labor under 18 USC 1584 and 18 USC 1589, robbing the Plaintiff of precious free time.

The Plaintiff charges that the Defendants' continual failure to cite the law requiring the Plaintiff, a Sovereign Citizen, to pay an indirect excise tax on his property (his Right to Labor or his income), is because there is none. As such, the Defendants are enforcing an illegal tax (Fraud) and operating outside the confines of the U.S. Constitution (Abuse of Power).

The Plaintiff charges the Defendants' "income taxation" scheme is inconsistent and excessive by default, and causes additional enslavement to retrieve Rightful property. This is excess taxation and a violation of the U.S. Constitution.

Missing from these Exhibits is any reference to any Court Case proceeding in which the Plaintiff should have had an opportunity to present arguments to an impartial Jury. The Plaintiff's Property has been taken without a trial, depriving the Plaintiff of "Due Process". The alleged fraudulent downgrading of the Plaintiff to a "taxpayer" has circumvented his Constitutional Rights (Amendments I, IV, V, VI, VII, VIII, and XIII). These Rights continue to be circumvented through the Defendants recommended methods for resolution of this matter, inclusive of the Collection Due Process Hearing.

The Plaintiff charges that the IRS' fraudulent proposal (Exhibit 4), and escalating extortion process (Exhibits 5 – 18) are the basis of liens and levies on the Plaintiff's property; the liens and levies are thus void, therefore additional property belonging to the Plaintiff has been stolen.

The Plaintiff charges that the forms and procedures used by the Defendants are specifically crafted to coerce him into paying an excise tax commonly known as "income tax" upon what must be his Right to Labor, as it is the only activity he engages in, and which produces the income which the Defendants are using as a measure of their undefined tax. Had the Defendants been clearly stating valid, applicable taxation law, as are criminal laws governing murder, theft, etc., there would be no doubt that the tax may apply to such entities as corporations, or persons knowingly engaged in certain taxable activities, but not to the Plaintiff. When the Plaintiff challenged the Defendants in writing (Exhibit 1), requiring specifics, he did not receive any information. Two more written inquiries (Exhibits 8 and 12), and a phone call on February 24, 2004 also remain unanswered. The Defendants are still withholding crucial information.

The Plaintiff charges the Defendants' unjustified documents are Harassment and Negligence, oppress resistance, and coerce submission of his "Unalienable Rights". If performed verbally in a confined environment, as stipulated in 384 U.S. 436, this would constitute violation of Miranda Rights, except the Plaintiff is not in custody. This level of threat rivals a mental beating. The Defendants have not identified a law to which the Plaintiff is subject. Coercing compliance to an illegal demand by threatening to take his house and robbing his bank account is emotionally devastating, and is abuse of power by the Defendants.

The creation of complex law, combined with equally complex enforcement procedures and forms, purposely evading the Plaintiff's comprehension, cannot be used against him under the claim that "ignorance is no excuse for the law". This does not constitute ignorance on the Plaintiff's part, but highlights the Defendants' well crafted Fraud and Extortion to induce Oppression. The Plaintiff's past seven years of diligent research and documentation are proof that his sincere efforts to locate the truth cannot be deemed ignorance. He suffers Oppression and Abuse of Power.

The Plaintiff charges that the Defendants used the Postal System to mail threatening and fraudulent communications, violated 18 USC 876, and continue to do so.

The Plaintiff resides in Massachusetts and has worked many years in Connecticut. The increasing difficulties he encountered in trying to comply with 3 governments' increasingly complex tax laws every year for many years is mental torture. For the past seven years, the Plaintiff has been enslaved to study complex law to protect his Constitutional Rights. The Plaintiff charges this is a function of all government employees through oath and responsibility (U.S. Constitution Article VI Clause 2 and 3, 3 USC 301, 4USC 101, and 5 USC 301). The Defendants failed their duty to uphold the U.S. Constitution. Upon notification of these issues, the Defendants again failed. The Plaintiff charges Dereliction of Duty, Breach of Contract, Negligence and Willful Blindness.

Funding is essential to the proper operation of the Federal and State Governments, and budget constraints pressure agencies to perform, but "the end does not justify the means". The "means" forced upon the Plaintiff combines vague U.S. Constitutional Amendments, misinterpretation, misapplied jurisdiction, procedural coercion, intimidating procedure, and misapplied extremely complex law to alienate his Constitutionally protected Unalienable Rights.

The Defendants have not presented lawful jurisdiction/authority, nor have they returned what must therefore be stolen property. On the contrary, by force they are extracting more property and expanding their scope of Fraud. The Plaintiff is now under malicious retaliation. The Defendants' actions referenced previously, and the following two Exhibits (19 and 20) from Dennis Parizek, document the danger to American Freedom from abuse of government power, stemming from ambiguous, complicated laws and the zealousness with which unqualified people will interpret them.

> Exhibit 19 – On 4/15/2004, the Plaintiff received a form letter 1862 (SC) (Rev.4-1999) dated 4/9/2004 and signed by Dennis L. Parizek, IRS Manager, Examination Operations in Ogden Utah, stating in his first sentence "We previously asked you to send us your federal income tax return (Form 1040, 1040A, or 1040EZ) for the tax period shown above." The letter references tax year 1999. I have not received any correspondence from any IRS office relating to the tax year 1999 until this letter. Attached is a Form 4549, with a first time tax assessment of $7,349.00 plus $3,809.43 in penalties, and $2,764.74 in interest, for a total first time assessment for tax year 1999 of $13,923.17 and no identification of a taxable activity on which the assessment is based, thus classifying it as fraudulent.

Exhibit 20 - On 4/15/2004, the Plaintiff received an identical form letter 1862 (SC) (Rev.4-1999) dated 4/9/2004 and signed by Dennis L. Parizek, IRS Manager, Examination Operations in Ogden Utah, stating in his first sentence "We previously asked you to send us your federal income tax return (Form 1040, 1040A, or 1040EZ) for the tax period shown above." The letter references tax year 2001. I have not received any correspondence from any IRS office relating to the tax year 2001 until this letter. Attached is a Form 4549, with a first time tax assessment of $479,515.03, penalties of $184,408.53, plus $66,987.25 in interest, for a total first time tax assessment for tax year 2001 of $730,910.82 and no identification of a taxable activity on which the assessment is based, thus classifying it as fraudulent.

In April 2000 the Plaintiff filed an Affidavit "In Lieu of Federal and State Income Tax Forms". As it was not answered, and the additional requests for information were not answered, the IRS has never specified a taxable activity that the Plaintiff engaged in, which would make the Plaintiff liable for a tax, thus there is no requirement for him to file. This crucial fact is applicable to any and all tax years.

Both Exhibit 19 and 20 display Dennis Parizek's biased efforts to retaliate against the Plaintiff. He fraudulently represents prior correspondence for these two tax years. He does not follow the same protocol as Lynn Walsh did for tax year 2000, as Exhibits 1-18 show. In tax year 2001, the Plaintiff was engaged in his Right to Labor to support his family and trying to support his wife's needs during her difficult cancer battle by working at home. The Plaintiff attempted day-trading. The income from this nontaxable activity (reference Court Cases cited herein) are misrepresented by Dennis Parizek. The same sources which supplied him with stock sales records, had Dennis Parizek made any effort to inquire, would also have supplied him with the cost of the purchased stocks as well. His bias is recorded in his exorbitant, fraudulent assessment and violates 26 USC 7214(a)(1), (2), and (7) as well as the other charges stipulated above.

While completing the 1998 CDORS Nonresident Income Tax forms, the Plaintiff discovered discrepancies, which he documented in 1998 CDORS Income Tax Returns mailed on April 14, 1999. On June 21, 1999, the Plaintiff received the first CDORS' Billing Notice claiming he owed $422.93 more tax than he had already paid, and $12.69 in interest. CDORS did not respond to the Plaintiff's reported discrepancies. The Plaintiff made several phone calls (documented) to CDORS in the next 3 months, to no avail. The Plaintiff discovered that CDORS' procedures taxed the Plaintiff's labor compensation outside CDORS' jurisdiction and that this was the source of the additional erroneous tax. The Plaintiff's further research led him to dispute the applicability of Income Taxation by the IRS, CDORS, and MDOR. This documentation is detailed above in the Federal section of this Complaint. From August 1999 through December 2000, the Plaintiff had been receiving monthly bills / threat notices from CDORS for penalties, interest, tax liens, wage attachments, tax warrants, and/or slandering of his credit history. Without retraction, these notices continue to threaten action at any time, without benefit of trial.

The Plaintiff included MDOR in his mailing of 22 Affidavits in April 2000, disputing the applicability of MDOR "Income Tax", again to no avail. Similar correspondence has transpired with similarly fraudulent enforcement of inapplicable taxation, as detailed in the Federal Section of this Complaint.

Any Constitutionally prohibited or limited activity at Federal level is also prohibited or limited at State level, and identifies the CDORS and MDOR violations as identical.

The Plaintiff charges that the Conn. Governor and the CDORS Commissioner have been contacted 4 times, both have authority to correct the CDORS misconduct, both have disregarded the Plaintiff's documents, and both are personally responsible, as well.

The Plaintiff charges that the U.S. Attorney General, Conn. Attorney General, and Mass. Attorney General have been notified and have failed to respond or act to protect the Plaintiff's Unalienable Rights.

## VII. RELIEF

Time is of the essence. The Plaintiff requests an immediate temporary injunction reversing levy and lien actions already taken and prohibiting any further action by the IRS, CDORS, and MDOR, or any agent on behalf of these Government agencies, until the Plaintiff has had an opportunity to dispute this matter in Court.

The IRS liens and levies are upon the Plaintiff's primary place of residence, which also supports his employment. Should these unjustified actions be allowed to continue, not only will his family become homeless, but his ability to earn income will also be shut down. He will no longer be able to pay anything, as the space and tools he needs to earn his income are in jeopardy.

The Defendants' actions, threats, and Negligence continue to oppress the Plaintiff's Rights to Liberty and Pursuit of Happiness. The Plaintiff's Freedom continues to suffer. The Defendants' illegal activities escalate with time, and weigh heavily on Plaintiff's existence. The Plaintiff's property and credit integrity are under attack. The Plaintiff is continually threatened with penalties, tax warrants, levies, liens, and wage attachments without due process. The financial and emotional strain and probability of increased, unjustified loss of the Plaintiff's property are high. In May 2000, the Plaintiff's wife was diagnosed with Breast Cancer. Since then, she has had chemotherapy, radiation, and seven surgeries. Their private health insurance is expensive. The Plaintiff is financially struggling due to the Defendants' actions, which are seriously impacting his time and ability to earn a living. The IRS' recent levy action has put extreme stress on the Plaintiff's ability to meet his financial obligations and provide for his family. The Plaintiff cannot afford to pay the alleged extortion amounts or the costs of professional help and fees with this Case. The Plaintiff and his family have been subjected to enormous stress, and are in continual fear that more of their property and liberty are stolen without "due process". Their health is at stake. The Plaintiff seeks security for his family, all property, their credit integrity, and themselves.

The Defendants, whether through ignorance or by design, have caused, and continue to cause grave injury to the Plaintiff's and his wife's health, relationship, and property; and continue to impede their enjoyment of Life, Liberty, and Pursuit of Happiness.

The Plaintiff has made several well documented, written requests beginning in April 2000 with the IRS, other Federal agencies, and MDOR, and beginning in April 1999 with CDORS, requiring critical information be given so that he could accurately determine and pay any taxes he might owe. As of this date, this information is still being withheld. The Plaintiff submits to the Court the Court Case cites contained herein as a reasonable, clearly understandable, legal basis for his actions and requests that the Court require the Defendants to produce their legal justification in clearly understandable terms, as it has been as clear as mud, so far, what they are up to. The Plaintiff requests permanent relief by requiring the Defendants to explicitly identify the legal applicability of their tax, should there be one, and the uniform assessment of such, so that the Plaintiff may gladly comply and support legal operation of government; or, if there is not one, a signed letter addressed to the Plaintiff stating in crystal clear terms that there is not, so as to be clear to any employer that there is no withholding requirement and that the letter suffices for any forms normally required by employers. The Plaintiff seeks a permanent Court Order for himself and his wife against the Defendants, barring any future action for taxation of their Right to labor.

The Plaintiff seeks permanent remedy, should the IRS' actions be found fraudulent, in the return of all property illegally taken by the IRS from the Plaintiff's family, inclusive of fees incurred due to the Defendants' actions, at its present day value and compensation for Plaintiff's enslavement, lost time, family's loss of life's enjoyment, and violations of Constitutional Rights. As the offenses are ongoing and continual, the Plaintiff seeks the return of all of his stolen property at its fair current value, dating back to the origin of the offenses, 34 years, or 1978 in lieu of prior records, and includes replacement value of slave labor stolen. As of Jun 30, 2004, this will have accrued approximately $5,856,121.00 in value. This adjusted property value is based on calculations per stipulations below; is unevenly split between the IRS, CDORS, and MDOR agencies; and does not contain legal costs, also accruing. The Plaintiff will submit his spreadsheet data to explain this value.

   A. The Plaintiff seeks the return of all the property extracted from his income from 1978 to present.

   B. The Plaintiff submits that, from 1978 to present, his wasted time spent collecting and maintaining receipts, learning tax procedures, and complying with IRS, CDORS, and MDOR procedures and fraudulently represented requirements, is forced enslavement; its value is stolen property; he seeks its return.

   C. The Plaintiff submits that his time during the past seven years spent researching complex code to recover his stolen property is also forced enslavement and its value is stolen property; he seeks its return.

D. The Plaintiff submits that each hour of enslavement is valued at each year's fair labor compensation rate, which was its established market value at the time it was stolen.

E. The Plaintiff submits that the value of any of his stolen property has depreciated over time withheld due to the cost of living, and that a fair adjustment such as the federally published Annual Cost of Living Index, compounded monthly, be utilized to derive its equivalent value today.

F. The Plaintiff submits that the value of any of his stolen property, held over time, deserves a monthly compounded 12% per year interest as representative of the property's fair present-day value, had it been available for use.

G. The Plaintiff submits that a monthly compounded 10% per year penalty also apply to any of his stolen property, as partial compensation for the loss of enjoyment of this property.

2. The Plaintiff submits that the Defendants oppressed his Freedom and this loss has significant additional value, as substantiated by our ancestors' bloodshed over the King of England's similar taxation atrocities. It should be reflective of the value "We, the People" put on Freedom and the penalty for Government Deprivation of Rights, Fraud, Extortion, Slavery, Excessive Force, Dereliction of Duty, Willful Blindness, and Negligence. The Plaintiff submits his lost time away from his pursuit of happiness and lost enjoyment of his confiscated property for 34 years, as well. The Plaintiff seeks $20,000,000.00 additional monetary compensation for these losses, and should be assessed against the Defendants according to their respective responsibilities in causing the damage.